[Cite as *State v. Burch*, 2026-Ohio-777.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-08-069 |
| vs. | : | OPINION AND JUDGMENT ENTRY 3/9/2026 |
| MICHAEL TROY BURCH, | : | |
| Appellant. | : | |
| | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 24CR41591


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Neal D. Schuett, for appellant.


**O P I N I O N**


**SIEBERT, J.**

{¶ 1} Michael Troy Burch appeals his conviction and sentence after pleading guilty to three aggravated arson offenses, felonious assault, obstructing official business, inducing panic, and associated specifications. On appeal, Burch contends the trial court

failed to advise him of whether the aggravated arson convictions would merge for sentencing purposes, failed to actually merge his aggravated arson convictions and sentence, inappropriately ran those sentences consecutively to one another, and listed the incorrect offenses in its sentencing order. However, Ohio law plainly demonstrates (1) the trial court did not need to advise Burch on merger before his plea of guilty, (2) the trial court could not merge his aggravated arson convictions, (3) consecutive sentences were supported by the record, and (4) the trial court had continuing jurisdiction to correct the typographical error in its original sentencing entry.

### Brief Background

{¶ 2} In March of 2024, Burch intentionally set his home on fire after pouring gasoline on the carpet and using a lighter to ignite it. Burch's girlfriend was at his house when he set it ablaze. The resulting fire spread to two neighboring properties and required several neighbors, including one in a wheelchair, to evacuate. When police, fire, and other emergency personnel arrived, they found Burch in his front yard holding a gun to his head. When approached by a sheriff's deputy, Burch pointed the gun at the deputy and pulled the trigger. However, the gun did not discharge, and police took Burch into custody.

{¶ 3} A grand jury indicted Burch for five counts of aggravated arson, felonious assault on a peace officer, obstructing official business, inducing panic, and various associated specifications. The trial court initially found Burch incompetent to stand trial, but after being restored to competency, Burch entered guilty pleas to three first-degree felony counts of aggravated arson, felonious assault, obstructing official business, inducing panic, and their associated specifications. Two second-degree aggravated arson counts were dismissed. During the plea hearing, the prosecutor recited a statement of facts constituting Burch's offenses. When asked if he agreed with the factual statement,

- 2 -

Burch indicated he did not agree that he had pointed a gun at a police officer. Burch's counsel asked for a minute to confer with Burch, after which Burch advised the court "I agree that everything is true." The court subsequently accepted Burch's plea.

{¶ 4} At sentencing, the trial court acknowledged that Burch had a long, documented history of mental health issues, including bipolar disorder and schizophrenia. Nonetheless, the trial court asserted that Burch "displayed a unique ability to plan and implement a series of activities that were very intentional in nature designed to burn down your house for whatever reason in your mind that you had." As a result, the trial court concluded that Burch was "sound mind at the time that [he] committed these offenses." The trial court further noted that Burch's possession of a firearm during the incident served as a "complicating factor" and that Burch was lucky to be alive.

{¶ 5} The trial court sentenced Burch to an aggregate prison term of 21-24 years. In doing so, the court concluded that Burch's aggravated arson convictions did not merge because each involved a separate victim. In addition, the court imposed consecutive six-year sentences to each of the aggravated arson charges, finding that it was "necessary to punish [Burch], and more importantly to protect the public from [him]." The trial court also concluded the consecutive sentences were not "disproportionate to the conduct or danger posed by [Burch,]" that his offenses "were part of the course of conduct[,] and the harm caused [was] so great or unusual that a single prison term would not adequately reflect the seriousness of [Burch's] conduct."

{¶ 6} Burch now appeals.

**First Assignment of Error – Was Burch's Plea Knowing, Voluntary, and Intelligent?**

*Applicable Law*

{¶ 7} A guilty plea is a "complete admission of the defendant's guilt." Crim.R. 11(B)(1). As a result, "[a] criminal defendant's choice to enter a guilty plea is a serious

decision." *State v. Bishop*, 2018-Ohio-5132, ¶ 10. "When a defendant enters a guilty plea in a felony criminal case, the plea must be knowingly, intelligently, and voluntarily made." *State v. Smith*, 2020-Ohio-3074, ¶ 7 (12th Dist.). If it is not, the plea is unconstitutional. *Bishop* at ¶10. Therefore, in order to safeguard the defendant's rights, trial courts are required to cover various topics with a defendant before accepting a guilty plea. Crim.R. 11(C); *Bishop* at ¶ 11.

{¶ 8} For example, the trial court must advise offenders that pleading guilty results in a waiver of constitutional rights such as the right to a jury trial, to confront witnesses testifying against the offender, and of the State's burden to prove the offender's guilt beyond a reasonable doubt. *See id.*, citing Crim. R. 11(C)(2)(c). A trial court's failure to advise defendants of their constitutional rights renders the plea presumptively unconstitutional. *State v. Dangler*, 2020-Ohio-2765, ¶ 14.

{¶ 9} In addition to advising defendants of the constitutional rights they waive by pleading guilty, trial courts must also advise defendants of various nonconstitutional rights, such as whether they are subject to supervision by Ohio's parole board after being released from prison ("postrelease control"). *Id.* at ¶ 15-17, R.C. 2967.28. A trial court's "complete failure" to advise a defendant of their nonconstitutional rights or obligations, will result in the plea being presumptively unconstitutional. *Id.*

*Analysis*

{¶ 10} Burch argues his guilty pleas to the aggravated arson offenses are invalid because the trial court failed to include in its plea colloquy advice concerning whether the offenses would merge. In addition, Burch claims the trial court erred by proceeding with the plea after Burch initially disagreed with the State's recitation of facts regarding the felonious assault charge. Burch asserts the trial court should have made further inquiries to ensure that Burch understood the nature of the charges, especially in light of his mental

health history.

{¶ 11} Ohio caselaw quickly demonstrates each of these arguments are without merit. We will discuss merger in more detail in Burch's second assignment of error, but Ohio courts have consistently held "[t]here is . . . no requirement that a trial court advise a defendant regarding the possible merger of offenses for sentencing or ensure that a defendant understands the merger of offenses before accepting the defendant's guilty pleas." *State v. Albright*, 2019-Ohio-1998, ¶ 18 (8th Dist.). *See also State v. Pagan*, 2019-Ohio-4954, ¶ 26 (10th Dist.); *State v. Farakhan*, 2025-Ohio-1130, ¶ 5 (9th Dist.); *State v. Carnahan*, 2016-Ohio-3213, ¶ 23 (3rd Dist.); *State v. Jefferson*, 2014-Ohio-2555, ¶ 21 (2nd Dist.).

{¶ 12} We also find no issue as to the court's inquiries into Burch's understanding of the charges. While Burch initially disagreed with the State's recitation of facts, his subsequent assertion—after conferring with counsel no less—that the statement of facts was indeed true obviated any need for the trial court to make further inquiries. *State v. Rivera*, 2014-Ohio-3378, ¶ 28 (12th Dist.) ("There is no requirement that a court enter into a discussion with a defendant or defendant's counsel to ensure there is an understanding where no uncertainty is otherwise indicated"); *State v. Smith*, 2020-Ohio-3074, ¶ 18 (12th Dist.), quoting *Rivera*.

{¶ 13} We overrule this assignment of error.

**Second Assignment of Error – Should Aggravated Arson Charges Have Been Merged for Sentencing Purposes?**

*Applicable Law*

{¶ 14} When a defendant is convicted of two separate offenses of "similar import," the indictment may include all the offenses, but the defendant may only be convicted of one so as to prevent double jeopardy. R.C. 2941.25(A). Only if "the defendant's conduct

constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each" can multiple punishments be imposed. R.C. 2941.25(B). When considered together, these two statutory clauses only permit multiple convictions for multiple offenses if any one of the following applies: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 2015-Ohio-995, ¶ 13. Otherwise, the offenses must be "merged," and the court can only convict and impose a sentence on the defendant for one of the offenses. *Id*. If offenses are merged, the prosecution elects which offense it wishes to pursue for sentencing, and the trial court sentences the defendant on that elected offense. *See State v. Sperry*, 2025-Ohio-2626, ¶ 39 (12th Dist.).

{¶ 15} The test for determining whether multiple offenses are of "similar import" becomes critical in analyzing merger questions. If the defendant's conduct puts more than one individual at risk, the multiple offenses are of dissimilar import and merger will not be required. *Ruff* at ¶ 23, citing *State v. Jones*, 18 Ohio St.3d 116, 118 (1985) (holding dissimilar import resulting from one car accident with multiple victims); *State v. Franklin*, 2002-Ohio-5304, ¶ 48 (finding dissimilar import when defendant set one fire, placing six different people at risk). Likewise, multiple offenses are of dissimilar import if the resulting harm from each offense is separate and identifiable (i.e., one offense is not "incident" to the other). *Ruff* at ¶ 23.

{¶ 16} The focus of our analysis must be on the defendant's conduct and is fact dependent. *Id*. at ¶ 26. If any of the following is true, the defendant may be convicted and sentenced for multiple offenses:

(1) the offenses were dissimilar in import, determined by

analyzing whether

> a. *the defendant's conduct put more than one person at risk*; or

> b. if each offense caused separate and identifiable harm

> (2) the offenses were committed separately; or

> (3) the offenses were committed with separate animus or motivation

Id. at ¶ 25. (Emphasis added).

*Analysis*

{¶ 17} Burch argues his three separate arson charges were allied offenses of similar import. As a result, he asserts he cannot receive multiple punishments for the same offense. But, again, Ohio caselaw definitively states otherwise. The Ohio Supreme Court has held that a single fire can support multiple aggravated arson charges because if it "created a risk of harm to . . . separate person[s]." *Franklin* at ¶ 48.

{¶ 18} When Burch set fire to his own home, his girlfriend was there, putting her at risk of harm. In addition, the fire spread to two neighboring properties, placing those properties and their occupants at risk. Burch's actions created a risk of harm to three different people (his girlfriend and two neighbors). The charges are not allied and do not require merger under Ohio law.

{¶ 19} We overrule Burch's second assignment of error.

**Third Assignment of Error – Were Consecutive Sentences Proper?**

*Applicable Law*

{¶ 20} Ohio law creates a presumption in favor of concurrent sentences. *State v. Bonnell*, 2014-Ohio-3177, ¶ 4. However, if the trial court "finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and

that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. . ." that presumption may be overcome. R.C. 2929.14(C)(4) (the "Statute"). In addition to these findings, the Statute also requires the trial court to find, as relevant here, that

> At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> [or]
>
> The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.* at (C)(4)(b), (c). Ohio law requires the trial court to state these findings at the sentencing hearing to "afford[] notice to the offender and to defense counsel" as to why consecutive sentences were imposed. *Bonnell* at ¶ 29, citing Crim.R. 32(A)(4). In doing so, "the trial court is not required to provide a word-for-word recitation of the language of the statute or articulate reasons supporting its findings." *State v. Fridley*, 2017-Ohio-4368, ¶ 48 (12th Dist.).

{¶ 21} However, a "reviewing court [should be able to] discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings" in favor of consecutive sentences. *Bonnell* at ¶ 29. Stated differently, Ohio law appellate courts must review the record and determine if the record "clearly and convincingly" supports the trial court's findings. *Id.* at ¶ 28; R.C. 2953.08(G)(2)(a). If the record does not support the trial court's findings, the appellate court must modify or vacate the sentence. *Id.*

*Analysis*

{¶ 22} Burch does not argue on appeal that the trial court did not make the findings required by the Statute. Instead, he argues that consecutive sentences are not supported by the record. Burch points to the fact he had no prior criminal history and asserts his "conduct was the result of his severe mental illness not a purposeful intent to harm others." As a result, Burch contends that consecutive sentences effectively criminalized his mental illness instead of serving as a mitigating factor.

{¶ 23} No one, including the trial court, is oblivious to these mitigating factors Burch points to. However, before imposing consecutive sentences, the trial court emphasized that despite Burch's criminal and mental history, he nonetheless "displayed a unique ability to plan and implement a series of activities" that resulted in the arson of three homes. Regardless of whether he purposefully intended to harm anyone, the trial court concluded that Burch *knew* what he was doing.[1] Moreover, the trial court noted that his possession of a gun—which he pointed at a police officer and pulled the trigger—served as a "complicating factor" to this series of events. We conclude that Burch's consecutive sentences were supported by the record.

{¶ 24} This assignment of error is overruled.

## Fourth Assignment of Error – Does the Trial Court's Erroneous Entry Void Burch's Convictions?

{¶ 25} Finally, Burch argues his convictions are voidable because the trial court's original sentencing entry of July 16, 2025, stated that Burch was convicted of three offenses of aggravated arson and listed R.C. 2907.02(A)(1) as the applicable code

---

1. Burch pled guilty to three first-degree counts of aggravated arson. Aggravated arson is defined as "knowingly . . . [c]reat[ing] a substantial risk of serious physical harm to any person other than the offender" via a fire or explosion. R.C. 2909.02(A)(1). "A person acts knowingly, *regardless of purpose*, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

section. As Burch correctly points out, this code section criminalizes rape, not aggravated arson. R.C. 2909.02(A)(1) criminalizes aggravated arson. Although the trial court later entered an order correcting this error on August 13, 2025, Burch nonetheless asserts this order is invalid because it came after Burch already filed an appeal, divesting the trial court of jurisdiction.

{¶ 26} Burch's argument is ultimately without merit. Generally speaking, a trial court is permitted to correct clerical mistakes at any time. Crim.R. 36. The Ohio Supreme Court recently reaffirmed this proposition when it observed that the use of a nunc pro tunc entry to correct a clerical error is permitted even when the case is pending on direct appeal. *State ex rel. Harris v. Rothgery*, 2026-Ohio-578, ¶ 21. A clerical error is a mistake that is mechanical in nature, apparent on the record, and does not involve a legal decision or judgment. *State v. Lester,* 2011-Ohio-5204, ¶ 18. However, trial courts are "'divested of jurisdiction' to issue [an amended] entry to correct a mistake in its judgment entry *that was assigned as error on appeal*.'" *State v. Schrader*, 2020-Ohio-3925, ¶ 9 (12th Dist.), quoting *State v. Alford*, 2012-Ohio-3490, ¶ 11 (2nd Dist.). (Emphasis added).

{¶ 27} Here, while the amended entry came after Burch's notice of appeal, it came before Burch's brief (filed September 8, 2025) asserting this assignment of error. In *Schrader*, the amended orders came months after the notices of appeal were filed. *Id.* at ¶ 4. Ultimately, the trial court's amendment did not alter anything that was not already apparent on the record, as the underlying proceedings *never* involved allegations of rape. Stated differently, because Burch had not specifically raised this error on appeal when the trial court corrected the entry, and he raises no assignments of error on appeal that were otherwise contested or impacted by the trial court's amended order, we find no reversible error. *State v. Elliott*, 2023-Ohio-4377, ¶ 27 (11th Dist.).

{¶ 28} Burch's final assignment of error is overruled.

{¶ 29} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge